In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1118

SYCAMORE INDUSTRIAL PARK ASSOCIATES,

*Plaintiff-Appellant,*

*v.*

ERICSSON, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 06 C 768—**David H. Coar**, *Judge.*

ARGUED SEPTEMBER 9, 2008—DECIDED OCTOBER 20, 2008

Before FLAUM, WILLIAMS, and SYKES, *Circuit Judges*.

FLAUM, *Circuit Judge.* In 1985, plaintiff Sycamore Industrial Park Associates bought an industrial property with fixtures, including a boiler-based steam heating system, from defendant Ericsson, Inc. Before it sold the property, Ericsson installed a new natural gas heating system, but it left the old heating system in place. Several years after purchasing the property, Sycamore discovered that the boilers, pipes, and various pipe joints that make up the

old system were insulated with asbestos-containing material. Sycamore sued to force Ericsson to remove and dispose of the abandoned asbestos insulation and reimburse Sycamore for alleged response costs it has incurred or will incur in removing the asbestos insulation. This action arises under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, and under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972. The district court granted Ericsson's motion for summary judgment, and Sycamore appealed. For the reasons explained below, we affirm the district court's grant of summary judgment.

## I. Background

Ericsson owned the 28-acre property at issue, located in Sycamore, Illinois, for several decades. The property contains nine buildings where Ericsson manufactured electrical wiring and cable. During most of Ericsson's ownership of this property, the buildings were heated by the boiler system. The boilers are large mechanical units and are anchored to the floor of the two buildings that house them. They are connected to the other buildings through a pipe network. Most of the pipe network runs near the ceilings of the several buildings and is connected to the structures at intervals by metal fasteners. All of the insulated piping is located inside the various structures of the facility except for two areas where the piping extends between buildings. The insulated piping that extends between buildings is encased in a mechanical piping chase or in a metal casing. To maximize thermal

efficiency, most elements of the steam boiler system are covered with insulation. This insulation is physically attached to the steam boiler system and associated piping.

In January 1983, Ericsson ceased all of its manufacturing operations at this facility and sought to sell it to a third party. Soon thereafter, an Ericsson employee, Michael Kreiger, decided that he would like to purchase the property and operate it as an industrial park. Kreiger was Ericsson's vice president for managing services and purchases and was in charge of managing the Sycamore property for Ericsson.

Meanwhile, in the winters of 1983 and 1984, the boiler-based heating system was experiencing difficulty and needed costly repair and maintenance. In December 1984, while negotiating to sell the property to Kreiger, Ericsson leased part of the property to UARCO Inc. Before UARCO moved into the site, Ericsson installed asbestos-free natural gas unit heaters in the parts of the facility that UARCO would occupy.

In late 1984, Ericsson reached an agreement to sell the property to Kreiger. Kreiger then partnered with another Ericsson employee, Robert Boey, to form Sycamore Industrial Park Associates as an Illinois general partnership. As soon as the sale was completed, Kreiger would transfer ownership in the facility to the Sycamore partnership.

In the spring of 1985, Ericsson installed additional natural gas unit heaters so that the entire facility could be heated with the new units. Upon installing the new heaters, Ericsson discontinued use of the old boiler-based heaters, but it left the old heating system in place.

Ericsson's sale of the property to Kreiger closed on May 30, 1985. Kreiger immediately assigned the property to Sycamore. Ericsson did not remove the old heating system at the time of sale; the boilers and piping remained completely in place after the sale. At the time of the sale, neither Kreiger nor Boey requested that Ericsson remove the old heating system.

The abandoned boiler-based steam heating system has not been used for the purpose of heating the buildings since the 1985 closing. The parties disagree as to whether the system is merely turned off, meaning that it could be utilized again, or whether it is inoperable.

In 2004, Sycamore discovered asbestos in the insulation that covered the steam boiler system and associated piping. The parties dispute the circumstances under which the asbestos was discovered. Ericsson describes the discovery as the result of a repair and maintenance operation in an attempt to show that Sycamore was contemplating use of the boiler-based system. Sycamore responds that it discovered asbestos during a routine inspection by a prospective tenant and that it was not considering utilizing the old heating system.

Sycamore sued Ericsson, seeking to compel it to remove the asbestos-laden insulation. Sycamore claims that by discontinuing use of the boiler-based heating system containing asbestos insulation but not removing it from the site, Ericsson violated CERCLA and RCRA. Sycamore also sued under state law nuisance and negligence theories not at issue on appeal.

On January 9, 2008, the district court granted Ericsson's motion for summary judgment. The district court found that the defendant abandoned the asbestos insulation in place at the property prior to sale. Yet it held as a matter of law that the abandonment did not constitute "disposal" of a solid or hazardous waste into or on any land or water so that such solid waste or hazardous waste might enter the environment, as CERCLA requires. In addition, the district court held as a matter of law that the abandonment of the boiler-based heating system and the subsequent sale of the Sycamore property was not "handling, storage, treatment, transportation or disposal of any solid or hazardous waste," as required by RCRA. Sycamore appeals the district court's decision on the CERCLA and RCRA claims.

## II. Discussion

### A. Standard of Review

This Court reviews a district court's grant of a motion for summary judgment de novo. *Jackson v. County of Racine,* 474 F.3d 493, 498 (7th Cir. 2007). In doing so, all facts and reasonable inferences are construed in the light most favorable to the nonmovant party, Sycamore. *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). A district court's grant of summary judgment is to be affirmed if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

**B.  CERCLA Claim**

CERCLA liability attaches when a plaintiff establishes that: (1) the site in question is a "facility" as defined by CERCLA; (2) the defendant is a responsible party; (3) there has been a release or there is a threatened release of hazardous substances; and (4) the plaintiff has incurred costs in response to the release or threatened release. 42 U.S.C. § 9607(a); *Envtl. Transp. Sys., Inc. v. ENSCO, Inc.*, 969 F.2d 503, 506 (7th Cir. 1992); *3550 Stevens Creek Assocs. v. Barclays Bank*, 915 F.2d 1355, 1358 (9th Cir. 1990). The second and third elements are at issue here.

CERCLA states that a prior owner of a facility is a responsible party if it controlled the site "at the time of disposal" of a hazardous substance. 42 U.S.C. § 9607(a)(2). We have held in the past that asbestos is a hazardous substance within the meaning of CERCLA. *G.J. Leasing Co. v. Union Elect. Co.*, 54 F.3d 379, 384 (7th Cir. 1995). Therefore, for Ericsson to be a responsible party, Sycamore only needs to show that a disposal took place before Ericsson relinquished control of the site. CERCLA adopts the definition of "disposal" from the Solid Waste Disposal Act, which defines "disposal" as:

> [D]ischarge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

42 U.S.C. § 9601(29); 42 U.S.C. § 6903(3). Accordingly, to make a case for Ericsson's liability as a responsible party, Sycamore must establish that at the time it controlled the site it discharged, deposited, injected, dumped, spilled, or leaked a solid or hazardous waste or placed it into or on any land or water.

One issue that arises is whether the asbestos-laden boiler system is solid or hazardous waste. While CERCLA purports to cover both solid and hazardous waste, in order to be hazardous waste the material must be solid waste because the statute defines "hazardous waste" as "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics" may be hazardous. 42 U.S.C. § 9601(29); 42 U.S.C. § 6903(5). "Solid waste" is then defined as "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material." 42 U.S.C. § 6903(27). The parties dispute whether the asbestos materials that Ericsson left in the facility can be categorized as "discarded material" to satisfy the "solid waste" definition. However, we do not need to address this question. Assuming *arguendo* that the asbestos material is solid waste, Ericsson's actions still do not constitute "disposal" because it did not place the asbestos into or on any land or water so that it may enter the environment or be emitted into the air or discharged into any waters, as required by § 6903(3).

Sycamore argues that Ericsson disposed of the asbestos materials when it abandoned them in place and then

transferred the site to Sycamore. In other words, they claim that by selling the real estate, Ericsson was disposing of the asbestos.

In *G.J. Leasing v. Union Electric Company*, the plaintiffs advanced an argument very similar to Sycamore's argument here: that Union Electric disposed of a hazardous substance when it sold real estate containing asbestos. In that case, Union Electric sold a power station consisting of power generation equipment housed in a structure with significant amounts of asbestos in the walls. *G.J. Leasing*, 54 F.3d at 382-84. In *G.J. Leasing*, we determined that the mere sale of property containing a hazardous substance is not a disposal imposing liability. Our decision in *G.J. Leasing* emphasized that the only exposure to asbestos was inside the building; there was no apparent danger to air, land, or water outside of the building as required for "disposal." *Id.* at 383. We acknowledged that if the primary purpose and likely effect of the sale was to remove the asbestos in circumstances that would make the release of asbestos to the outside environment inevitable, the transferor could be held liable under CERCLA. But without such intent and likely effect, we concluded that asbestos abandoned in place in a structure did not lead to CERCLA liability. *Id.* at 385.

The Ninth Circuit reached the same conclusion in *Stevens Creek*, 915 F.2d 1355. Our sister Circuit determined there was no private cause of action under CERCLA for the sale of a building containing materials with asbestos because the defendant never "disposed" of a hazardous substance. It reasoned that asbestos built into a building

could not enter the environment or be emitted into the air, as required by the definition of "disposal." Even if the asbestos broke off, asbestos fibers would remain in the building. *Stevens Creek*, 915 F.2d at 1361.

*G.J. Leasing* and *Stevens Creek* are on point here. All asbestos insulation at the Sycamore facility is either inside a building or enclosed in a pipe chase or metal case.[1] There is no real threat that asbestos "or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground water," as CERCLA requires in § 9601(29).

Sycamore attempts to distinguish *G.J. Leasing* and *Stevens Creek*. It argues that in those cases the asbestos-containing material was being used for its intended purpose (to insulate structures), whereas in the instant case the asbestos insulation was no longer serving a

---

[1] Plaintiff cites testimony of David Kedrowski, defendant's expert, to argue that there may be another pipe underground. Kedrowski testified: "I was informed by Mr. Boey that there was another pipe extending underground between two of the buildings described as running to and from the underground pipe. The pipes I could see were not covered with insulation, at the locations where they were described as running to and from an underground pipe." (Pl. Br. 36). This testimony does not affect the conclusion that all *insulated* piping was encased because Kedrowski explicitly states that there was no insulation around this pipe. Moreover, Kedrowski's expert testimony is limited to the condition of the equipment after litigation was commenced. It cannot establish a disposal or release or threat of release at the time of sale.

purpose because the boiler-based heating system was out of operation. In fact, in *G.J. Leasing* the power plant was obsolete and "decommissioned." *G.J. Leasing*, 54 F.3d at 381-82. More importantly, this distinction does not make the reasoning from *G.J. Leasing* or that from *Stevens Creek* inapplicable to the scenario at issue in this case. Like in those cases, here there is no real possibility of asbestos entering the environment, as required to have a "disposal." For CERCLA liability, the defendant must be a "responsible party," defined as a party that controlled the site "at the time of disposal" of a hazardous substance. 42 U.S.C. § 9607(a)(2). Without a disposal, Ericsson is not a responsible party.

It is worth noting that in *G.J. Leasing* we also pointed out practical reasons why "the sale of a product which contains a hazardous substance cannot be equated to the disposal of the substance itself or even the making of arrangements for its subsequent disposal." *Id.* at 384. As we noted, a contrary rule would mean that sale of an automobile is an arrangement for disposal of a hazardous substance because every automobile contains lead in the battery. *Id.* We carved out an exception to this general principle, recognizing that an owner who wants to get rid of a toxic retaining pond, for example, cannot avoid CERCLA "arranger" liability merely by selling his entire facility, which includes the pond, to an unsuspecting purchaser. We described the toxic retaining pond example as the "malicious motive case." *Id.* We also recognized a third category of cases, the "mixed-motive case," in which a seller's intent is both to dispose of

hazardous waste and make a bona fide profit. We stated the limiting principle may be whether the materials are sold for reclamation. *Id.* Here, there is no evidence that Ericsson transferred the Sycamore property with the intent to dispose of a hazardous substance. It incidentally left the old heating equipment in place when it sold otherwise useful realty. It simply does not make sense to hold that Ericsson is a responsible party just because Sycamore decided to remove asbestos in place decades after it purchased valuable real estate in a legitimate transaction.

Even if we were to find that Ericsson is a responsible party, CERCLA also requires that there has been a release or there is a threatened release of hazardous substances. There is substantial overlap in terms used to define "disposal" and "release," so analysis of the "release" element required for CERCLA liability inevitably overlaps with "responsible party" analysis. *See Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 879 (9th Cir. 2001). CERCLA defines a "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." 42 U.S.C. § 9601(22). The term "environment" includes any "surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States." 42 U.S.C. § 9601(8).

The asbestos at the Sycamore facility is contained inside the buildings of the facility or, in the instances when insulated piping runs between buildings, is enclosed in a

piping chase or in a metal case. Sycamore has not pre-sented evidence—such as evidence of soil, water or air contamination—showing that the asbestos insulation has been placed "into or on any land or water" or emitted into the air as the applicable definition of "disposal" requires. We have stated that "the release of asbestos inside a building, with no leak outside, . . . is not governed by CERCLA." *G.J. Leasing*, 54 F.3d at 385; *see also Covalt v. Carey Canada, Inc.*, 860 F.2d 1434, 1439 (7th Cir. 1988) ("the interior of a place of employment is not the environ-ment for purposes of CERCLA"). The Ninth Circuit in *Stevens Creek* similarly suggested that when any resulting hazard from emission of asbestos fibers into the air would be confined to the interior of the building, there is no release or threat of release, and CERCLA does not apply. *Stevens Creek*, 915 F.2d at 1359-60. We reaffirm that when there is no emission into the outside environment, but rather any hazard resulting from emission of asbestos fibers would be confined inside a building, there is no release or threatened release, and thus there can be no liability under CERCLA. Even viewing all facts in the light most favorable to Sycamore, Ericsson's abandon-ment of the asbestos-laden insulation in place at the Sycamore site does not make it liable under CERCLA.

## C.  RCRA Claim

The RCRA citizen suit provision states, in relevant part, "any person may commence a civil action . . . against any person, . . . who has contributed or who is contributing to the past or present handling, storage, treatment, trans-

portation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

To establish RCRA liability, Sycamore must show that Ericsson "handled, stored, treated, transported, or disposed of" solid or hazardous waste. Sycamore first argues that Ericsson "disposed" of the boiler-based heating system when it abandoned the system in place. The definition of "disposal" is the same under RCRA and CERCLA, because RCRA also adopts the definition from the Solid Waste Disposal Act, which is its predecessor statute. 42 U.S.C. § 6903(3). Once again, because Sycamore cannot show that Ericsson placed the asbestos into or on land or water, emitted it into the air, or discharged it into water, we do not need to address the closer question whether the asbestos contained in the boiler-based heater satisfied the "solid or hazardous waste" requirement. Because the definition of "disposal" is the same, our reasoning that established that there was no disposal under CERCLA applies to a RCRA analysis as well. Sale of a facility with an abandoned asbestos-containing boiler system does not meet the statutory definition of "disposal."

Sycamore argues in the alternative that even if Ericsson did not dispose of the asbestos insulation, Ericsson is nonetheless liable because it handled and stored the asbestos insulation. Yet Sycamore presents no evidence that Ericsson handled, stored, or even touched any part of the heating system. In fact, there is no evidence that

Ericsson did anything to the asbestos-containing boiler system or its insulation prior to or after closing the sale with Sycamore. A plain reading of the "has contributed or is contributing" language of § 6972(a)(1)(B) compels us to find that RCRA requires active involvement in handling or storing of materials for liability. The ordinary meaning of "contribute" is "to act as a determining factor." *Webster's II New College Dictionary* (2005). By definition, the phrase "has contributed or is contributing" requires affirmative action. The vast majority of courts that have considered this issue read RCRA to require affirmative action rather than merely passive conduct—such as leaving a heating system in place when selling the real estate that houses it—for handling or storage liability. *See ABB Industrial Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 359 (2d Cir. 1997); *Interfaith Cmty. Org. v. Honeywell Int'l*, 263 F. Supp. 2d 796, 844-46 (D. N.J. 2003); *Delaney v. Town of Carmel*, 55 F. Supp. 2d 237, 255-57 (S.D.N.Y. 1999); *Marriott Corp. v. Simkins Indus., Inc.*, 929 F. Supp. 396, 398 n.2 (S.D. Fla. 1996). Thus, as a matter of law, by leaving equipment that is insulated by asbestos in place and then selling the Sycamore property, Ericsson did not handle, store, treat, transport, or dispose of the asbestos as required for RCRA liability.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for defendant.