**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CENTER FOR BIOLOGICAL
DIVERSITY; SIERRA CLUB;
GRAND CANYON WILDLANDS
COUNCIL,

     *Plaintiffs-Appellants*,

  v.

UNITED STATES FOREST
SERVICE, a United States
Government Agency,

     *Defendant-Appellee*,

  and

NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC.; SAFARI CLUB
INTERNATIONAL; NATIONAL
SHOOTING SPORTS
FOUNDATION, INC.,

     *Intervenor-Defendants-
Appellees*.

No. 21-15907

D.C. No. 3:12-cv-
08176-SMM

OPINION

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Argued and Submitted February 9, 2023
San Francisco, California

Filed September 1, 2023

Before:  M. Margaret McKeown, Jay S. Bybee, and Patrick
J. Bumatay, Circuit Judges.

Opinion by Judge Bybee

## SUMMARY[*]

### Resource Conservation and Recovery Act

The panel affirmed the district court's dismissal for
failure to state a claim of an action brought by the Center for
Biological Diversity and others (collectively, "CBD")
alleging that the United States Forest Service was liable as a
contributor under the Resource Conservation and Recovery
Act ("RCRA") by failing to regulate the use of lead
ammunition by hunters in the Kaibab National Forest in
Arizona.

The Kaibab is owned by the United States and managed
by the Forest Service.  Although the Forest Service has

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

broad authority to regulate hunting and fishing activities, it rarely exercises its authority to preempt state laws related to hunting and fishing; hunting activities are primarily regulated by the State of Arizona.

CBD argued that, even though Forest Service activity was not the direct source of any lead ammunition in the Khabib, the Forest Service was liable as a contributor under RCRA by virtue of (a) its general regulatory authority over the Kaibab, (b) the control it has exercised by issuing Special Use permits for outfitters and guides, and (c) its status as an owner of the Kaibab. The panel held that (a) the Forest Service's choice not to regulate despite having the authority to do so does not manifest the type of actual, active control contemplated by RCRA; (b) although the Forest Service has the authority to further regulate Special Use permits, it has not done so, and RCRA does not impose a duty on the Forest Service to do so; and (c) mere ownership is insufficient to establish contributor liability under RCRA.

The panel held that the district court did not abuse its discretion in denying CBD's motion to amend its complaint to add RCRA claims against Arizona officials because CBD's proposed amendment did not add any new claims or allegations against the Forest Service, and its claims against Arizona officials were barred by the Eleventh Amendment.

Finally, the panel denied as moot CBD's request that this case be reassigned to a different district judge.

**COUNSEL**

Alexander Houston (argued), Allison M. LaPlante, Lia Comerford, and James N. Saul, Earthrise Law Center, Lewis & Clark Law School, Portland, Oregon; Kevin M. Cassidy, Earthrise Law Center, Norwell, Massachusetts; for Plaintiff-Appellant.

Allen M. Brabender (argued), United States Attorney, Environment & Natural Resources Division; Michael C. Augustini, United States Attorney, Environmental Enforcement Section; Todd Kim, Assistant Attorney General; United States Department of Justice, Washington, D.C.; Gary Fremerman, United States Department of Agriculture, Washington, D.C.; for Defendant-Appellee.

Norman D. James (argued) and Bradley J. Pew, Fennemore Craig PC, Phoenix, Arizona; Lawrence G. Keane, National Shooting Sports Foundation, Newtown, Connecticut; for Intervenor-Defendant-Appellee National Shooting Sports Foundation Inc..

Michael T. Jean, National Rifle Association Office of the General Counsel, Fairfax, Virginia, for Intervenor-Defendant-Appellee National Rifle Association of America.

Jeremy E. Clare, Safari Club International, Mount Pleasant, South Carolina, for Intervenor-Defendant-Appellee Safari Club International.

# OPINION

BYBEE, Circuit Judge:

The Center for Biological Diversity, Sierra Club, and Grand Canyon Wildlands Council (collectively, "CBD") contend that the United States Forest Service ("USFS") is liable under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, for "contributing to the past or present . . . disposal" of lead ammunition in the Kaibab National Forest.  The district court concluded that USFS is not liable as a contributor under RCRA and dismissed the complaint for failure to state a claim.  *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 532 F. Supp. 3d 846 (D. Ariz. 2021).  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Kaibab National Forest Management*

In its complaint, CBD alleged the following facts, which we take as true for the purposes of this appeal.  The Kaibab National Forest consists of about 1.6 million acres of public land bordering the Grand Canyon.  It is home to a variety of wildlife and is a popular hunting destination, particularly renowned for big-game hunting.  Hunters who frequent the Kaibab commonly use lead ammunition.   Sometimes the ammunition is left behind by hunters when an animal is shot but not retrieved (i.e., the animal is wounded, evades the hunter, and dies elsewhere) or when hunters field-dress a kill (i.e., the internal organs are removed at the site of the kill to preserve the meat) and leave the remains behind.  When other animals feed on the remains of a shot-but-not-retrieved or field-dressed kill, they ingest fragments of the lead ammunition.  Lead is a potent toxin, and ingestion can lead

to numerous adverse health consequences for scavenger animals, including death.  Even very small fragments of lead ammunition can severely poison and kill birds.  Indeed, lead ingestion and poisoning attributable to spent ammunition has been documented in a number of avian species in Arizona's Forest Service land, including endangered California condors, bald and golden eagles, northern goshawks, ferruginous hawks, turkey vultures, and common ravens. The negative consequences of spent lead ammunition for birds led the federal government to ban the use of lead ammunition for waterfowl hunting nationwide over thirty years ago.  *See, e.g.*, 50 C.F.R. § 20.108; *see also* Migratory Bird Hunting:  Nationwide Requirement to Use Nontoxic Shot for the Taking of Waterfowl, Coots, and Certain Other Species Beginning in the 1991–92 Hunting Season, 56 Fed. Reg. 22100–01 (May 13, 1991).

As a national forest, the Kaibab is owned by the United States and managed by USFS.  16 U.S.C. § 1609(a).  The Property Clause of the Constitution gives Congress the "Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."  U.S. Const. art. IV, § 3, cl. 2; *see also United States v. Cnty. of San Francisco*, 310 U.S. 16, 29 (1940) ("The power over the public land thus entrusted to Congress is without limitations.").  In the exercise of this power, Congress has vested USFS with broad authority to regulate activities on, and occupancy of, national forests.  *See e.g.*, 16 U.S.C. § 473 et seq. (Organic Administration Act of 1897); 16 U.S.C. §§ 528–531 (Multiple-Use Sustained Yield Act of 1960); 16 U.S.C. §§ 1600–1614 (National Forest Management Act of 1976); 43 U.S.C. § 1701 et seq. (Federal Land Policy and Management Act of 1976).  Although USFS requires Special

Use authorization for commercial and guided hunting activities, *see* 36 C.F.R. §§ 251.50–251.65, the agency does not require a permit for recreational hunting on National Forest System lands.  Nor has USFS enacted any regulations related to permissible ammunition for hunting.

Rather, hunting activities are primarily regulated by the State of Arizona.  *See generally* Ariz. Rev. Stat. Ann. § 17-231.  Traditionally, "[s]tates have broad trustee and police powers over wild animals within their jurisdictions" to the extent that state management is "not incompatible with, or restrained by, the rights conveyed to the federal government by the constitution."  *Kleppe v. New Mexico*, 426 U.S. 529, 545 (1976) (internal quotation marks and citation omitted).  The federal government works cooperatively with states in the management of wildlife on federal lands, with states bearing most of the responsibility for the management of hunting and fishing.  *See, e.g.,* 16 U.S.C. § 7901(a)(1); 43 U.S.C. § 1732(b).  Consequently, even though USFS has broad regulatory authority that allows it to regulate hunting and fishing activities, USFS rarely exercises its authority to preempt state laws related to hunting and fishing.  *See* 43 U.S.C. § 1732(b); 36 C.F.R. §§ 241.2, 261.10(d).  Arizona allows hunters to use lead ammunition except when hunting waterfowl.  *See* Ariz. Admin. Code § R12-4-304(C)(3)(e)(i).  Arizona also has a voluntary program to reduce the use of lead ammunition, which provides hunters with non-lead ammunition at no cost during the big-game hunting season.

B.  *Resource Conservation and Recovery Act*

"RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste."  *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996).  Its "primary purpose . . . is to reduce the

generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" *Id.* (citing 42 U.S.C. § 6902(b)). Although the Environmental Protection Agency ("EPA") is largely responsible for the implementation and enforcement of RCRA, it may delegate that authority to the states. *Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 506 (9th Cir. 2013). The statute also contains a citizen-suit provision. 42 U.S.C. § 6972. The provision provides a private cause of action against:

> any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. . . .

42 U.S.C. § 6972(a)(1)(B). If a violation is found, the provision grants jurisdiction to the district court "to restrain any person . . . , to order such person to take such other action as may be necessary, or both. . . ." *Id.* § 6972(a).

## C. *Procedural Background*

This appeal is the latest chapter in the long-running litigation over the use of lead ammunition in the Kaibab National Forest. CBD filed this suit for declaratory and injunctive relief in 2012, alleging that USFS violated RCRA by creating "an imminent and substantial endangerment to health or the environment" through its failure to regulate the use of lead ammunition in hunting in the Kaibab. Specifically, CBD contends that USFS "has contributed and is contributing to the past or present disposal of solid or hazardous waste . . . by failing to use its broad authority to stop the disposal of lead in the form of spent ammunition" and "issuing Special Use permits for guiding and outfitting activities that do not prohibit the use of lead ammunition. . . ."

In 2013, the district court granted USFS's motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1). *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 2013 WL 3335234, at *1 (D. Ariz. July 2, 2013) ("*CBD I*"). We reversed, finding that CBD satisfied Article III standing requirements and remanded to the district court to decide USFS's motion to dismiss for failure to state a claim. *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 640 F. App'x 617, 618–20 (9th Cir. 2016) ("*CBD II*"). Following *CBD II*, the National Sports Shooting Foundation, the National Rifle Association, and the Safari Club intervened as defendants and also filed motions to dismiss and for judgment on the pleadings.

Rather than address the Rule 12(b)(6) question on remand, the district court dismissed the case as an impermissible request for an advisory opinion. *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 2017 WL 5957911

(D. Ariz. Mar. 15, 2017) (*"CBD III"*).  The court concluded that the case did not present a "real and substantial controversy" because a generalized court order directing USFS to "abate the endangerment" would "amount to nothing more than a recommendation," would not constitute "a conclusive, binding order," and "would be an improper intrusion into the domain of the USFS."  *Id.* at \*4–\*5 (internal quotation marks and citation omitted).  Again, we reversed and remanded for the district court to address whether CBD had stated a viable claim against USFS under RCRA.  *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 925 F.3d 1041, 1050 (9th Cir. 2019) ("*CBD IV*").

On remand for the second time, the district court granted USFS's motion to dismiss under Rule 12(b)(6).  *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 532 F. Supp. 3d 846 (D. Ariz. 2021) ("*CBD V*").  Relying on *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 851 (9th Cir. 2011), the district court concluded that CBD failed to establish that USFS is a "contributor" under RCRA.  *CBD V*, 532 F. Supp. 3d at 854.  *Hinds* "requires a defendant 'to have some active function in creating, handling, or disposing of the waste to be a contributor.'"  *Id.* (citing *Greenup v. Est. of Richard*, No. 2:19-cv-07936-SVW-AGR, 2019 WL 8643875, at \*2 (C.D. Cal. Dec. 13, 2019)).  Because the State of Arizona regulates hunting throughout the state, including on the Kaibab, the district court found that USFS "has not exercised control over hunting on the Kaibab."  *Id.* at 853.  The district court also reasoned that ownership alone is insufficient to establish RCRA contributor liability and that failing to regulate lead ammunition is passive conduct, not active involvement.  *Id.* at 853–54.  With regard to USFS's issuance of Special Use permits for commercial outfitters and guides, the district court found that any non-commercial

hunters may hunt on the Kaibab without securing an outfitter or guide, and thus they fell outside the control of the agency. *Id.* at 854.

After we remanded the case in *CBD IV*, CBD sought to amend its complaint to add Arizona officials, alleging that they are contributing to the disposal of spent lead ammunition on the Kaibab.  In the same order granting USFS's motion to dismiss, the district court denied the motion to amend.  *Id.* at 855.  The district court concluded that the Eleventh Amendment barred suit against Arizona or its officers.  The only exception would be a suit to enjoin Arizona officials under *Ex Parte Young*, 209 U.S. 123 (1908).  The court concluded that the proposal amendment failed to demonstrate how Arizona officials came with the exception.  *CBD V*, 532 F. Supp. 3d at 856.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review the district court's dismissal for failure to state a claim de novo.  *Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, 728 F.3d 868, 872 n.3 (9th Cir. 2013).  Denial of a motion to amend a complaint is reviewed for abuse of discretion, *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002), although leave generally should be granted unless "unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay," *United States v. Gila Valley Irrigation Dist.*, 859 F.3d 789, 804 (9th Cir. 2017) (quotation marks and citations omitted).

## III. DISCUSSION

CBD has raised three issues on appeal.  First, CBD appeals the district court's ruling that USFS is not a

contributor under RCRA.  CBD argues that USFS is a contributor by virtue of its general regulatory authority over the Kaibab, the control it has actually exercised with respect to Special Use permits for outfitters and guides, and its status as the landowner.  We address these subissues in Part III.A and find that the Forest Service's failure to regulate through direct action or permitting does not demonstrate some measure of control at the time of disposal or active involvement sufficient to support RCRA contributor liability.  Second, CBD argues that the district court erred when it denied CBD's motion to amend its complaint to add RCRA claims against Arizona officials.  We address this issue in Part III.B.  We hold that CBD's proposed amendment does not add any new claims or allegations against the Forest Service, and its claims against Arizona officials are barred by the Eleventh Amendment.  Third, CBD requests that, if we remand any of the case, we direct the remand to a different district judge.  Because we affirm the judgment of the district court on the first two issues, CBD's request for remand is moot, as we explain in Part III.C.

A.  *RCRA Liability and USFS*

In this section we will start with a review of RCRA liability and our decisions.  We then turn to CBD's arguments for why USFS is a "contributor" under RCRA.

1.  RCRA liability after *Hinds*

To state a claim under the citizen-suit provision of RCRA, CBD must allege that USFS (1) "has contributed or . . . is contributing to the past or present handling, storage, treatment, transportation, or disposal" (2) "of any solid or hazardous waste," (3) "which may present an imminent and substantial endangerment to health or the environment." 42

U.S.C. § 6972(a)(1)(B); *see also Ctr. for Cmty. Action & Env't Just. v. BNSF Ry. Co.*, 764 F.3d 1019, 1023 (9th Cir. 2014).

We have previously considered what it means to "contribute" to the disposal of waste. In *Hinds*, we held that to be a "contributor" a defendant must play an "active role with . . . direct connection to the waste, such as by handling it, storing it, treating it, transporting it, or disposing of it." 654 F.3d at 851. There, the owners of two shopping centers sought to hold dry cleaning equipment manufacturers liable as contributors under RCRA. *Id.* at 849. The groundwater below the centers became contaminated with perchloroethylene, a hazardous substance used in dry cleaning. Plaintiffs argued that the manufacturers were liable as contributors because they "operat[ed], provid[ed], install[ed], maintain[ed], and/or repair[ed] dry cleaning machinery which was designed so that wastewater contaminated with [perchloroethylene] would and did flow into drains and into the sewer system." *Id.* They also contended that the manufacturers included instructions explicitly stating that waste could be disposed in an open drain. *Id.*

Because RCRA does not "define what acts of contribution are sufficient to trigger liability," we interpreted "contribute" according to its "plain and ordinary" meaning. *Id.* at 850 (citing *Greenwood v. CompuCredit Corp.*, 615 F.3d 1204, 1208 (9th Cir. 2010), *rev'd on other grounds*, 565 U.S. 95 (2012)). Looking to the text of § 6972(a)(1)(B), dictionary definitions, and the interpretations of our sister circuits, we concluded that the citizen-suit provision "requires that a defendant be actively involved in or have some degree of control over the waste disposal process to be liable under RCRA." *Id.* at 851. In common usage,

"contribute" means "to 'lend assistance or aid to a common purpose,'or to 'have a share in any act or effect," or . . . "to be an important factor in; help to cause." *Id.* at 850 (citing *Webster's Third New International Dictionary* 496 (1993); *The Random House Dictionary of the English Language* 442 (2d ed.1987); *Cox v. City of Dallas*, 256 F.3d 281, 294 (5th Cir. 2001); *United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373, 1384 (8th Cir. 1989)). By creating liability in a person who "contribut[es] to" the "'handling, storage, treatment, transportation, or disposal' of hazardous waste," the statute "speaks in active terms;" and, in choosing such language, Congress indicated that it intended to connote "active functions with a direct connection to the waste itself." *Id.* at 851; *see also Sycamore Indus. Park Assocs. v. Ericsson, Inc.*, 546 F.3d 847, 854 (7th Cir. 2008) (defining "contribute" and concluding that "[b]y definition, the phrase 'has contributed or is contributing' requires affirmative action"). Looking to decisions from other courts, we determined that most had also interpreted contributor liability to require some kind of active involvement. *Hinds*, 654 F.3d at 851–52. Consequently, we held "that to state a claim predicated on RCRA liability for 'contributing to' the disposal of hazardous waste, a plaintiff must allege that the defendant had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process." *Id.* at 852. Under this interpretation of contributor liability, we determined that the manufacturers were not contributors because the "[m]ere design of equipment that generated waste, which was then improperly discarded by others, is not sufficient." *Id.*

Following *Hinds*, we have refined our interpretation of contributor liability in two additional cases. In *Ecological Rights Foundation*, 874 F.3d 1083, 1090 (9th Cir. 2017),

plaintiffs challenged the Pacific Gas and Electric Company's ("PG&E") treatment, cleaning, and storage of wooden utility poles "with [pentachloraphenol]-infused oils," contending that the chemical—a known carcinogen—would eventually migrate from PG&E's facilities into local bodies of water. Plaintiffs claimed that PG&E trucks picked up contaminants on their tires at PG&E facilities and carried them offsite, where the oils found their way into the soil or water. *Id.* at 1101. Ruling on appeal from summary judgment, we held that PG&E was not liable under this theory because plaintiffs "identified tire-tracking only as a *potential* mechanism by which PG&E might have contributed to the transportation and dispersal of [pentachloraphenol]-infused wastes," a showing that did "not establish that PG&E *actually contributed* to the handling, transportation, or disposal of solid waste via vehicle tire-tracking." *Id.* (second emphasis added).

In *California River Watch v. City of Vacaville*, 39 F.4th 624 (9th Cir. 2022), plaintiffs brought a claim against the City of Vacaville for transporting hexavalent chromium, a carcinogen, that had contaminated groundwater sources through its water-distribution system. *Id.* at 627. The City had not deposited the waste into the water system; that had occurred between 1972 and 1982 through the acts of a private wood treatment facility. *Id.* Rather, the plaintiffs contended that the City was liable because its existing water system pumped the hexavalent chromium that had contaminated the City's water. *Id.* at 630. We concluded that, as in *Hinds*, RCRA transporter liability requires "that the 'transportation' at issue must also be directly connected to the waste disposal process—such as shipping waste to hazardous waste treatment, storage, or disposal facilities." *Id.* at 633 (footnote omitted). The City was not a contributor

because it had not willingly or deliberately transported the waste; it had only "incidentally carrie[d] the waste through its pipes when it pump[ed] water to its residents."  *Id*.

### 2.  Applying *Hinds* to this case

In this case, CBD argues that USFS exercises "some degree of control" within the meaning of *Hinds*, 654 F.3d at 851, over the disposal of lead ammunition in the Kaibab.  It raises three independent reasons for that conclusion: (a) USFS is authorized to exercise plenary regulatory authority over the Kaibab; (b) USFS has exercised control over hunters by issuing Special Use permits to guides and outfitters; and (c) USFS exercises control through its status as nominal owner of the Kaibab.  We will address each claim.

### a.  Plenary regulatory authority as control

We should be clear from the outset:  CBD does not claim that any USFS activity is a direct source of lead shot in the Kaibab.  CBD has not alleged that any USFS employees are themselves using lead ammunition in any of their duties.  The core of CBD's complaint is that USFS "has the authority to control the disposal of lead on the Kaibab," but has thus far failed to regulate the use of lead shot by others.  Both sides accept that Congress, under the Property Clause, has the authority to direct USFS to regulate the use of lead in the Kaibab.  Beyond that, the statutory and administrative record is mixed.  CBD points out that Congress has given USFS plenary control over federal forests, including the power to "designate areas . . . of lands in the National Forest System where . . . no hunting or fishing will be permitted for reasons of public safety, administration, or  compliance with provisions of applicable law."  43 U.S.C. § 1732(b).  A different agency, the Department of the Interior, through the

Fish and Wildlife Service, has long banned the use of lead ammunition in the hunting of waterfowl, coots, and certain other species.  50 C.F.R. § 20.108.

On the other hand, in the same provision that gives USFS control over federal forests, Congress specified that USFS's authority "shall [not] be construed . . . to require Federal permits to hunt and fish . . . on lands in the National Forest System."  43 U.S.C. § 1732(b).  And Congress has provided in recent appropriations acts that "[n]one of the funds made available by this or any other Act may be used to regulate the lead content of ammunition, ammunition components, or fishing tackle under the Toxic Substances Control Act (15 U.S.C. § 2601 et seq.) or any other law."  Consolidated Appropriations Act of 2022, Pub. L. No. 107-103, sec. 2, div. G, tit. IV, § 438, 136 Stat. 421 (2022).  The implication of this restriction is not immediately clear to us.  USFS has not argued to us that this provision outright bars the relief CBD seeks.[1]  We do not know the scope of the appropriations restriction and whether it would prohibit USFS from, for example, conducting a rulemaking to regulate lead use in the nation's forests, but such provisions would surely test the current limits of USFS's general authority.  *See United States v. McIntosh*, 833 F.3d 1163, 1172–73 (9th Cir. 2016) (holding that federal courts may enforce an appropriations rider restricting the Department of Justice from using funds to prevent states from implementing their own laws with respect to marijuana use).  We do not refer to these

---

[1] We note that at oral argument in *CBD II*, USFS represented that it could remove the lead bullets left on Forest Service land, require hunters to do so, or prohibit the use of lead bullets in hunting on the Kaibab.  *CBD IV*, 925 F.3d at 1045, n.1 (citing Oral Argument at 18:18, *CBD II*, 640 Fed. App'x 617 (9th Cir. 2016) (No. 13-16684), http://www.ca9.uscourts.gov/media/video/?20151118/13-16684/).

provisions to suggest that USFS can or cannot use its existing authority to regulate the use of lead ammunition, but to demonstrate that, whatever the scope of USFS's authority, Congress has not directed USFS to regulate hunters' use of lead shot on federal lands.

We think the important implication of our discussion of USFS's regulatory authority is this: If USFS has a *duty* to regulate the disposal of lead ammunition in hunting activities in on national forest lands, it must arise directly and unequivocally from some other source of law. CBD says that USFS's duty arises under RCRA. RCRA creates a private cause of action, which may be brought against "any person, *including the United States*." 42 U.S.C. § 6972(a)(1)(B) (emphasis added). By simply "including" the United States in the category of "person[s]" subject to RCRA, the law imposes no greater or lesser duty on an agency of the United States than it imposes on "any [other] person." And that brings us to the heart of CBD's claim. Does USFS "contribute to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste"? *Id.* Because CBD admits that USFS is not the source of any lead ammunition found in the Kaibab, the question is whether a person who has some power to prevent someone else from contributing to the handling, storage, treatment, transportation, or disposal of hazardous waste is liable under § 6972(a)(1)(B).

*Hinds* and its progeny indicate that the answer is no. RCRA requires more than just hypothetical control to establish contributor liability. Rather, the statute requires "control over the waste at the time of its disposal." *Hinds*, 654 F.3d at 852; *see also id.* at 851 (rejecting liability for manufacturers who designed the entire waste disposal process because they had engaged in "merely passive

conduct"). We think this means "actual control." *See Ecological Rts. Found.*, 874 F.3d at 1101 (rejecting liability where there was no showing that the defendant "*actually contributed* to the handling, transportation, or disposal of solid waste via vehicle tire-tracking" (emphasis added)); *see also Cal. River Watch*, 39 F.4th at 633 (rejecting liability for incidental transportation of waste through the city's water system).

We know of no court to have adopted CBD's failure-to-regulate theory. The closest case may be *Cox*, 256 F.3d 281. There, the Fifth Circuit adopted a broader reading of "contribute" than we have, concluding that RCRA only requires contributors to "have a part or share in producing an effect." *Id.* at 295. But the case provides no support for the claim that lax regulation "contributes" to the disposal of hazardous waste. In *Cox*, the City of Dallas had identified an open garbage dump as the site of illegal disposal of hazardous waste and a health threat to the surrounding neighborhoods. The city filed suit to close the site. In the meantime, however, the city demolished structures on city property and knew that its contractors were dumping the waste materials at the unlawful landfill. *Id.* at 285–86. The district court found the city liable under RCRA for dumping the materials at the site and for issuing permits at the site *after* the city had obtained a judgment against the dump's owner. The Fifth Circuit affirmed the judgment against Dallas for its own material dumped at the site, but declined to address "whether the City's permitting activities could also be a basis for § 6972(a)(1)(B) liability." *Id.* at 296–98 & n.31.

Despite having broad regulatory authority over national forest lands, USFS has not issued regulations restricting the use of lead ammunition or requiring hunters to remove spent

lead ammunition. A decision by an agency not to regulate—whether the lack of regulation represents a conscious decision or a lack of initiative—is passive conduct. In and of itself, nonregulation *contributes* nothing to the disposal of hazardous waste. If USFS *required* hunters to use lead ammunition, our analysis might be different. But, within the Kaibab, USFS has no actual control over lead ammunition at the time it is discharged by hunters. An agency's choice not to regulate despite authority to do so does not manifest the type of actual, active control contemplated by RCRA.

### b. Issuance of Special Use permits as control

Recognizing that USFS is not actively contributing to the lead shot in the Kaibab, CBD points to USFS's regulation and issuance of Special Use permits for commercial hunting as demonstrating a "measure of control" over the disposal of lead ammunition. *Hinds*, 654 F.3d at 852. CBD argues that, at least for commercial hunters, USFS is actively involved in the use of lead ammunition because the agency issues permits to guides and outfitters that contain terms and conditions to "[m]inimize damage to scenic and esthetic values and fish and wildlife habitat and otherwise protects the environment." 36 C.F.R. § 251.56(a)(1)(i)(B). CBD argues that because "[t]he Forest Service could include, as a condition of the special use permits, a requirement that persons hunt in a manner that does not result in the disposal of spent lead ammunition," USFS is "actively involved in the disposal of lead ammunition on the Kaibab."

Although USFS issues Special Use permits for commercial hunting activities and maintains control over the terms and conditions of such permits, USFS has declined to control the disposal of spent lead ammunition. In the end, CBD's argument about USFS's control over Special Use

permits is an iteration of its broader failure-to-regulate argument. Although USFS has authority to further regulate the terms and conditions of Special Use permits to prohibit the use of lead ammunition or removal of spent ammunition, it has not done so, and RCRA does not impose a duty on USFS to do so. Consequently, at best, USFS's issuance of Special Use permits is "incidental" activity, *see Cal. River Watch*, 39 F.4th at 633; it is better described as not "actually contribut[ing]" to the lead disposal problem, *Ecological Rts. Found.*, 874 F.3d at 1101. In either case, it does not come within RCRA's cause of action.

c. Property ownership as control

Finally, CBD contends that USFS is liable as a contributor under RCRA by virtue of its status as a landowner. As a threshold matter, USFS does not actually own the Kaibab; the United States does, but we accept that USFS is the Nation's steward over the national forests. 16 U.S.C. § 1609(a). But even if we considered USFS the owner of the Kaibab, we conclude that something more than mere ownership is required to establish contributor liability under RCRA.

We have not previously considered the relevance of land ownership to RCRA liability. However, in defining contributor liability in *Hinds*, we relied on several cases that rejected the idea that property ownership alone is sufficient to establish RCRA liability. *See Hinds*, 654 F.3d at 851–52. For example, we cited *Sycamore Industrial Park Associates*, in which the Seventh Circuit concluded that "the phrase 'has contributed or is contributing' requires affirmative action . . . rather than merely passive conduct." *Id.* at 851 (quoting *Sycamore Industrial Park Associates v. Ericsson, Inc*, 546 F.3d 847, 854 (7th Cir. 2008)). In that case a prior owner of

an industrial property installed a new heating system, but left the old, inoperative one in place. When the new owner discovered that the old system had asbestos, it sued the prior owner under RCRA. The Seventh Circuit held that there was no "affirmative action rather than merely passive conduct" on the part of the prior owner and that "leaving a heating system in place when selling the real estate" did not "contribute" to the disposal of the asbestos within the meaning of RCRA. *Sycamore*, 546 F.3d at 854; *see also ABB Indus. Sys. Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 359 (2d Cir. 1997) (property ownership was insufficient for RCRA liability where defendants had not themselves contaminated the site).

The Third Circuit similarly affirmed an active involvement requirement to find liability under RCRA. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 263 F. Supp. 2d 796, 845 (D.N.J. 2003) ("[A] property owner's 'studied indifference' is insufficient to impose RCRA liability."), *aff'd*, 399 F.3d 248 (3d Cir. 2005). We can contrast these cases with *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500 (4th Cir. 2015), where the Fourth Circuit determined that Baltimore could be liable under RCRA for contributing to waste disposal when the city owned the land and "exacerbated" the spread of hazardous waste through its "well-intentioned efforts to remediate contamination." *Id.* at 545; *see Cox*, 256 F.3d at 296–98 (holding Dallas liable for its contractor's dumping of city waste at an unlawful landfill).

In this case, USFS has not taken any affirmative action in addition to property ownership which would give it actual, as opposed to hypothetical, control over the disposal of spent lead ammunition. Without more than passive ownership,

USFS has not "contributed to" the disposal of waste in the active sense required under RCRA.

B. *Motion to Amend to Add Arizona Officials*

Following our remand in *CBD IV*, CBD sought to amend its complaint to add claims against Arizona officials. The proposed amendment did not state any new claims against USFS or allege additional facts to support CBD's existing claims; nor did CBD add any new theories of RCRA liability. As it had alleged with respect to USFS, CBD's proposed amendment claimed that

> Arizona Officials have control over the regulation and administration of hunting within Arizona . . . . [and] have contributed and are contributing to the past or present disposal of solid or hazardous waster . . . by issuing and/or failing to take acts to stop the issuance of, hunting licenses that do not prohibit the use of spent lead ammunition on the Kaibab.

In its motion to file an amended complaint, CBD repeated that Arizona officials control the use of lead ammunition in the Kaibab both "separate and apart from" and "subordinate to" USFS's authority. Although RCRA only permits suit against a "governmental instrumentality or agency, to the extent permitted by the Eleventh Amendment to the Constitution," 42 U.S.C. § 6972(a)(1)(B), CBD sought declaratory and injunctive relief under *Ex Parte Young*, 209 U.S. 123 (1908). *Ex Parte Young* "allows suits seeking prospective relief against a state official who has a fairly direct connection to an ongoing violation of federal law." *City of San Juan Capistrano v. Cal. Pub. Util. Comm'n*, 937

F.3d 1278, 1281 (9th Cir. 2019) (internal quotation marks and citation omitted); *see also Sofamor Danek Grp., Inc. v. Brown*, 124 F.3d 1179, 1184 (9th Cir. 1997) (state officials may be subject to suit "to permit the federal courts to vindicate federal rights and hold [them] responsible to the supreme authority of the United States").

"When justice requires, a district court should "freely give leave" to amend a complaint." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016) (quoting Fed. R. Civ. P. 15(a)(2)). However, a district court has discretion to deny leave to amend when there are "countervailing considerations" such as "undue delay, prejudice, bad faith, or futility." *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1117 (9th Cir. 2015). Amendment is futile when "it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Armstrong v. Reynolds*, 22 F.4th 1058, 1071 (9th Cir. 2022); *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1118 (9th Cir. 2013); *see also Ariz. Students' Ass'n*, 824 F.3d at 871. One reason amendment may be futile is "the inevitability of a claim's defeat on summary judgment." *Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991); *see Yakama Indian Nation v. Wash. Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999) (where Eleventh Amendment immunity would bar claims against the individual state officers as a matter of law, a proposed amendment is futile).

The proposed amendment fails to allege any violation of federal law. Like the claims against USFS, the claims against Arizona officials in CBD's proposed amendment are premised on Arizona's failure to use its regulatory authority to prevent the disposal of spent lead ammunition on the Kaibab. Indeed, in its motion to amend, CBD conceded that

the "proposed claim is legally similar to the claim against the Forest Service." CBD has thus failed to allege an ongoing violation of RCRA for the same reasons it has failed to allege a violation of RCRA by USFS. As the *Ex parte Young* exception does not apply, any amendment would futile. We note the district court denied the motion to amend without prejudice, giving CBD ample time to develop another legal theory against either USFS or the Arizona officials. It did not do so, and we decline to manufacture a legal theory under which the Arizona officials would fall within the *Ex parte Young* exception. *See Armstrong*, 22 F.4th at 1071.

C. *Reassigning the Case*

CBD also requested that this case be reassigned to another district judge. Because the district court did not err in dismissing the complaint and denying CBD's motion to amend, the request for reassignment is moot.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**