PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SOUTH CAROLINA WILDLIFE
FEDERATION; SOUTH CAROLINA
COASTAL CONSERVATION LEAGUE;
AUDUBON SOUTH CAROLINA,
              *Plaintiffs-Appellees,*

              v.

H.B. LIMEHOUSE, JR., Executive
Director, South Carolina
Department of Transportation,          No. 07-1431
              *Defendant-Appellant,*

              and

FEDERAL HIGHWAY ADMINISTRATION;
ROBERT L. LEE, Division
Administrator, Federal Highway
Administration,
              *Defendants.*

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(2:06-cv-02528-DCN)

Argued: September 25, 2008

Decided: December 5, 2008

Before MOTZ, KING, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Motz and Judge King joined.

---

**COUNSEL**

**ARGUED**: Randolph R. Lowell, WILLOUGHBY & HOEFER, P.A., Columbia, South Carolina, for Appellant. James Blanding Holman, SOUTHERN ENVIRONMENTAL LAW CENTER, Charleston, South Carolina, for Appellees. **ON BRIEF:** Mitchell Willoughby, Tracey C. Green, WILLOUGHBY & HOEFER, P.A., Columbia, South Carolina, for Appellant. Geoffrey R. Gisler, SOUTHERN ENVIRONMENTAL LAW CENTER, Chapel Hill, North Carolina, for Appellees.

---

**OPINION**

DUNCAN, Circuit Judge:

The South Carolina Wildlife Federation and co-plaintiffs (collectively "SCWF") brought suit against federal and state agencies and agency directors, alleging violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, arising from the proposed construction of the Briggs-DeLaine-Pearson Connector ("the Connector") in South Carolina. Relevant to this appeal, the Director of the South Carolina Department of Transportation ("the Director"), who was sued in his official capacity, moved to dismiss on the ground that the claims against him were barred by sovereign immunity under the Eleventh Amendment. The district court denied the Director's motion, and he filed this interlocutory appeal.[1] For the reasons that follow, we affirm.

---

[1]Denial of a motion to dismiss on grounds of sovereign immunity is immediately appealable under the collateral order doctrine. *See P.R. Aque-*

## I.

NEPA requires an agency undertaking a "major Federal action[ ]" to produce a "detailed statement" concerning "the environmental impact of the proposed action." 42 U.S.C. § 4332(C). The environmental impact statement ("EIS") must address, *inter alia*, any adverse impact a proposed project would have on the environment and possible "alternatives to the proposed action." *Id.* For actions funded by federal grants to states, NEPA provides that the EIS may be prepared by state actors, with federal guidance, so long as the state actors have "statewide jurisdiction" and responsibility for the proposed action. 42 U.S.C. § 4332(D).

The EIS process has several steps. The responsible agency must first prepare a draft EIS and solicit comments on it. 40 C.F.R. § 1503.1. Those comments must then be "assess[ed] and consider[ed]" in drafting the final environmental impact statement ("FEIS"), which is published in the *Federal Register.* 40 C.F.R. § 1503.4, 1506.10(b). The FEIS is followed by issuance of a record of decision, which must: state the agency's decision; "[i]dentify all alternatives considered by the agency," specifically noting those that were environmentally preferable and the factors considered in rejecting them; and state whether the agency has adopted all proposed practicable means to minimize environmental impact. 40 C.F.R. § 1505.2. During the NEPA process, an agency cannot take any action which would "(1) Have an adverse environmental impact; or (2) Limit the choice of reasonable alternatives." 40 C.F.R. § 1506.1(a).

---

*duct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993). Although pendent appellate review is a limited standard of narrow applicability, *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006), this court may review other issues that are not "independently appealable" if they are substantially related to the immunity determination. *See Akers v. Caperton*, 998 F.2d 220, 223-24 (4th Cir. 1993).

The major federal action in the instant case is the construction of the Connector, a bridge which, when complete, will span fewer than ten miles and link the South Carolina towns of Rimini (pop. 286) and Lone Star (pop. 601). J.A. at 61; Appellee's Br. at 7. The Connector is slated to cost between $100 and $150 million and will be fully funded through federal appropriations; no state money is scheduled to be used. J.A. at 94. Thus far, at least $16 million in federal funds has been appropriated for the project. J.A. at 95. In the ongoing case below, SCWF contends that the Defendants have failed to comply with the procedural requirements of NEPA and that therefore the Federal Highway Administration's (the "FHWA") approval of the project is invalid under NEPA.

The FHWA and the South Carolina Department of Transportation ("SCDOT") undertook the NEPA process following Congressional approval of the Connector, with the federal and state agencies sharing responsibility for the preparation of the EIS. J.A. at 47-49, 64-65; *see also* Environmental Impact Statement: Calhoun, Clarendon and Sumter Counties, SC, 65 Fed. Reg. 71,349, 71,349-50 (Nov. 30, 2000). The agencies promulgated a draft EIS, which was prepared by state and federal officials in conjunction with outside consultants, in October 2001. J.A. at 8-9, 95-96. Following the receipt of comments, the FEIS was issued in December 2002; and in June 2003, the FHWA issued a record of decision approving the FEIS. J.A. at 96. The FHWA published notice of its decision in the *Federal Register* on March 17, 2006, establishing a 180-day period to challenge the agency action. SCWF timely filed suit seeking a declaratory judgment on the ground that the FEIS and record of decision were improperly issued and seeking an injunction against further action pending compliance with NEPA. J.A. at 37.

The named defendants below were the SCDOT, the Executive Director of the SCDOT,[2] the FHWA, and the Division

---

[2]At the time the suit was filed, Elizabeth Mabry was the Executive Director of the SCDOT. Appellant, H.B. Limehouse, Jr., subsequently

Administrator of the FHWA. The SCDOT and the Director moved to dismiss, claiming that SCWF lacked standing to proceed, that SCWF's claims were not ripe, and that both the SCDOT and the Director were entitled to sovereign immunity from suit pursuant to the Eleventh Amendment. The district court found that SCWF had standing and that the claims were ripe. On the question of Eleventh Amendment immunity, the district court found that there had been no congressional abrogation of the state's immunity and so the SCDOT as a state agency was immune from suit. J.A. at 106-07; *accord City of Boerne v. Flores*, 521 U.S. 507 (1997).

The Director also claimed Eleventh Amendment immunity. However, the district court found that the Director was not entitled to immunity pursuant to *Ex parte Young*, 209 U.S. 123 (1908). The Director now appeals this decision, challenging the district court's conclusions on the standing and immunity questions.

## II.

As a court must satisfy itself of its jurisdiction, we turn first to the issue of standing. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).[3] Standing has three essential elements: injury, causation, and redressability. *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997). To satisfy the constitutional standing requirement, a plaintiff must provide

assumed that position. Because the Director was sued in his official capacity, Limehouse was substituted as a party to the suit pursuant to Fed. R. Civ. P. 25(d).

[3]We consider the Director's challenge to SCWF's standing, although we do not ordinarily entertain claims raised initially on appeal because standing implicates this court's jurisdiction. Though the Director did not challenge SCWF's standing in proceedings before the district court, other defendants not parties to this appeal did so. Upon consideration of their motion to dismiss, the district court concluded that SCWF's standing was adequately established. J.A. at 97-102.

sufficient evidence to support the conclusion that: (1) the plaintiff suffered an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted); *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice [to satisfy these elements], for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (citations and internal quotation marks omitted).

We conclude SCWF alleged facts sufficient to survive a motion to dismiss for lack of standing. SCWF asserted that construction of the Connector would harm its members' ability to use and enjoy the relevant area for a variety of educational, scientific, recreational, and aesthetic purposes, and that one or more of its members currently use the land for such purposes. *Sierra Club v. Morton*, 405 U.S. 727, 738-39 (1972) (an organization may sue on behalf of its members); *id.* at 738 (holding that harms to "'aesthetic, conservational, and recreational' as well as economic values" are cognizable injuries for the purposes of demonstrating standing (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 154 (1970))); *see also Lujan*, 504 U.S. at 562-63. In addition, SCWF traces the injury to the Connector that the Director and federal Defendants planned and developed and that they intend to finance and construct.

Lastly, SCWF has shown that enjoining the Director from proceeding with the construction of the Connector, and requiring the reexamination of the proposal in accordance

with NEPA, would redress its procedural and substantive concerns. The redressability of an injury to a procedural right turns on the potential impact of the court's action on the injury-causing party. *Massachusetts v. EPA*, 127 S.Ct. 1438, 1453 (2007) (requiring that a litigant seeking to vindicate a procedural right show "some possibility that the requested relief will prompt the injury-causing party to reconsider" the decision). Circuit precedent establishes that there is standing to assert procedural allegations under NEPA against state defendants in order to preserve the environmental status quo pending federal review. *See Ely v. Velde* ("*Ely II*"), 497 F.2d 252, 257 (4th Cir. 1974) (finding that if a state were to undertake construction on a project subject to NEPA requirements absent procedural compliance with the Act, the federal court should enjoin such action); *see also Sierra Club v. Hodel*, 544 F.2d 1036, 1037 (9th Cir. 1976) (analyzing a NEPA claim that an actor failed to prepare a required EIS as presenting a federal question for the purposes of subject matter jurisdiction).

The party seeking an injunction need not show that injunction of the state defendant would lead directly to redress of the asserted injury, but only that relief will preserve the federal procedural remedy. *Arlington Coalition on Transp. v. Volpe*, 458 F.2d 1323, 1329 (4th Cir. 1972); *see also Massachusetts v. EPA*, 127 S.Ct. at 1453 (noting that a litigant "accorded a procedural right to protect his concrete interests . . . can assert that right without meeting all the normal standards for redressability and immediacy" (quoting *Lujan*, 504 U.S. at 572 n.7)). Accordingly, we hold that the district court did not err in finding that SCWF possessed standing to maintain this litigation.

### III.

### A.

We now turn to the Director's argument that the claims against him are barred by sovereign immunity. Neither NEPA nor the Administrative Procedure Act ("APA") in itself provides a cause of action against state actors. *See* 5 U.S.C. § 701 (agencies covered by the APA include authorities only of the United States government); 42 U.S.C. § 4332 (applying the provisions of NEPA to "all agencies of the Federal Government"); *Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971) (finding that NEPA, "by . . . [its] very language, impose[s] no duties on the states"). However, we have previously concluded that federal courts have "a form of pendent jurisdiction . . . based upon necessity" over claims for injunctive relief brought against state actors in order to preserve the integrity of federal remedies. *Arlington Coalition*, 458 F.2d at 1329. Where "the challenged activities" of state actors "would make a sham of the reconsideration required by federal law," federal courts may entertain suits against state actors "to preserve federal question jurisdiction in the application of federal statutes."[4] *Id.*

---

[4]As the Director notes, *Arlington Coalition* did not specifically order injunctive relief against state defendants under NEPA. *See* 458 F.2d at 1339. However, in that case the question of whether the court could reach the state defendants on NEPA grounds was not presented. At the time of the *Arlington Coalition* court's ruling, no EIS had been issued for the project in question. There was no EIS because the federal agency claimed that NEPA did not apply to a project begun before the passage of the Act. This court ruled that NEPA did apply and specifically ordered the federal agency to revise its understanding of the Act accordingly. *Id.* Thus, there was not and could not be any evidence on the record concerning the relationship of the state agency to the EIS process and the federal law in question. Nevertheless, this court directly applied its language concerning the importance of the preservation of federal remedies to both state and federal defendants and to both NEPA and the Federal-Aid Highways Act. *Id.* at 1329 (asserting jurisdiction over all actions by the state that "would make a sham of the reconsideration required by federal law").

In this case, the state agency is a named "joint lead agency" on an extant FEIS. The Director and his agency have been heavily involved in the entire EIS process required by federal law. Where, as here, sovereign immunity is not a bar, this court has jurisdiction over the state to preserve the integrity of federal remedies.

In light of circuit precedent, including our decision in *Maryland Conservation Council, Inc. v. Gilchrist*, 808 F.2d 1039, 1042 (4th Cir. 1986), we hold that NEPA does provide a cause of action for private plaintiffs challenging compliance with its provisions.[5] The federal statute and our precedent permit suit against a state actor where a party seeks to preserve federal rights under NEPA pending the outcome of federal procedural review. Because state actors could significantly alter a project's environmental impact, a federal court may hear a suit for injunctive relief. Were it otherwise, state action could render a NEPA violation a "*fait accompli*" and eviscerate the federal remedy. *Gilchrist*, 808 F.2d at 1042.

In this case, the federal remedy to be protected is reconsideration of the FEIS. Although the Director argues that he will not proceed with construction absent FHWA approval, actions taken by the state short of building the road could change the cost of proposed alternatives, thereby impacting the federal agency's review and reconsideration. *See Gilchrist*, 808 F.2d at 1042 (warning that state action could fundamentally alter

---

[5]In *Jersey Heights Neighborhood Ass'n v. Glendening*, the court assumed without deciding that the APA provided a cause of action to enjoin non-federal defendants from proceeding in violation of NEPA. 174 F.3d 180, 186 (4th Cir. 1999). In this case, because we hold that SCWF has a cause of action under NEPA, we do not reach the question of whether suit could be brought against a state defendant under the APA.

Other circuits, which have concluded that NEPA does not create a private right of action, have required litigants to bring NEPA actions through the APA. However, by its terms, the APA applies only to federal agencies. *See, e.g.*, *Karst Envtl. Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1296–98 (D.C. Cir. 2007); *Southwest Williamson County Cmty. Ass'n, Inc. v. Slater*, 173 F.3d 1033, 1035–36 (6th Cir. 1999). We recognized in *Jersey Heights* that the APA might therefore be a problematic source for a cause of action against state defendants, noting in dicta: "The APA by its terms applies only to 'agency action,' and appellants have not identified the source of their cause of action against the state defendants in this case." 174 F.3d 180, 186 n.1 (4th Cir. 1999). We recognize the tension reflected in the *Jersey Heights* footnote but are nevertheless bound by circuit precedent in finding a cause of action for plaintiffs in this case.

the environmental impact assessment in violation of the purpose of NEPA); *cf. Arlington Coalition*, 458 F.2d at 1336 ("[V]oluntary compliance alone does not give appellants full relief."). Because action by the Director to further the project prior to such review could fundamentally alter the project's calculus and thereby undermine the federal remedy, the court has jurisdiction to enjoin such action. *See Arlington Coalition*, 458 F.2d at 1327.

B.

1.

The Director contends that regardless of the effect his actions might have on the NEPA process, the district court erred in finding that the Eleventh Amendment does not bar suits against him. The district court based its holding that the Director was not immune from suit under the Eleventh Amendment on *Ex parte Young*, which permits suits against state officers for prospective relief where there is an ongoing violation of federal law. J.A. at 107-10 (citing *Ex parte Young*, 209 U.S. at 159-60); *see Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 276-77 (1997). "[T]he existence of sovereign immunity is a question of law that we review de novo." *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002). We also review de novo a "district court's legal determination [of] whether *Ex parte Young* relief is available." *Id.* at 192-93 (quoting *CSX Transp., Inc. v. Bd. of Pub. Works of W. Va.*, 138 F.3d 537, 541 (4th Cir. 1998)).

In *Frew ex rel. Frew v. Hawkins*, the Supreme Court summarized the Eleventh Amendment's recognition of states' sovereign immunity and the Court's holding in *Ex parte Young*:

> The Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent their consent. To ensure the

enforcement of federal law, however, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. This standard allows courts to order prospective relief, as well as measures ancillary to appropriate prospective relief. Federal courts may not award retrospective relief, for instance, money damages or its equivalent, if the State invokes its immunity.

540 U.S. 431, 437 (2004) (internal citations omitted). For purposes of Eleventh Amendment analysis, it is sufficient to determine that SCWF alleges facts that, if proven, would violate federal law and that the requested relief is prospective. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645-46 (2002) ("[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." (citing *Coeur d'Alene*, 521 U.S. at 281)).

SCWF's complaint falls within the doctrine of *Ex parte Young* permitting suits against state officials for prospective relief from ongoing violations of federal law. The declaratory relief SCWF seeks is simply the determination that past actions by the Defendants did not comply with NEPA. It adds no additional burden on the Defendants other than the injunctive relief, and therefore does not threaten the sovereignty of the state, represented by the Director. *See Verizon Md.*, 535 U.S. at 646. SCWF also seeks to enjoin the Defendants from constructing the Connector prior to full compliance with NEPA and its implementing regulations. A prayer for such injunctive relief is a prospective claim against an action that would violate federal law. Thus, the district court did not err in finding the Director unprotected by sovereign immunity based on the doctrine of *Ex parte Young*.

2.

The Director further argues that he is not properly a party to this suit because he lacks the required "special relation" to

the alleged violation of federal law. *See Ex parte Young*, 209 U.S. at 157; *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001). Where a state law is challenged as unconstitutional, a defendant must have "some connection with the enforcement of the act" in order to properly be a party to the suit. *Lytle v. Griffith*, 240 F.3d. 404, 409 (4th Cir. 2001) (quoting *Ex parte Young*, 209 U.S. at 157). This "special relation" requirement ensures that the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials. *Ex parte Young*, 209 U.S. at 158-59. Primarily, the requirement has been a bar to injunctive actions where the relationship between the state official sought to be enjoined and the enforcement of the state statute is significantly attenuated. Such cases have been dismissed on the ground that "[g]eneral authority to enforce the laws of the state" is an insufficient ground for abrogating Eleventh Amendment immunity. *Gilmore*, 252 F.3d 331 (quoting *Children's Healthcare Is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996)); *see also Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979). Thus, the Director's connection to the Connector project need not be *qualitatively* special; rather, "special relation" under *Ex parte Young* has served as a measure of *proximity to* and *responsibility for* the challenged state action. This requirement ensures that a federal injunction will be effective with respect to the underlying claim.

Appellant argues that the required "special relation" is lacking in this case because the Executive Director of the SCDOT is not "charged with any duty under a federal statute or . . . with enforcement of a state statute that would violate federal law." Appellant's Br. at 20. This test is inapposite. A court may look to state law to determine whether the requisite connection exists between an individual defendant and the federal statute at issue. *Lytle*, 240 F.3d at 409-10. In this case, both state and federal law impose duties upon the Director that are determinative of the existence of the necessary special relation.

Under South Carolina state law the Director has supervisory authority over the state's participation in the FEIS process. S.C. Code Ann. § 57-1-430(A) (2007). The Director and his agency are deeply involved in the preparation of the challenged FEIS and the procurement of permits to proceed with construction on the basis of the FEIS. By federal statute, the SCDOT is a "joint lead agency" with the FHWA in the preparation of any environmental document required by NEPA for the Connector. 23 U.S.C. §§ 139(c)(3), 139(c)(6)(B). Under the Director's supervision, the SCDOT has participated in planning the Connector, in the process of applying to other state agencies for the permits necessary for construction, and in the EIS process. J.A. at 20-21, 27. The FEIS lists SCDOT employees among those who were responsible for its preparation and is jointly signed by two engineers, one from the FHWA and one from the SCDOT. *Id.* at 101 n.3. And the SCDOT will be the agency eventually charged with the actual construction of the Connector. *Id.* at 101. As the administrative head of the agency with responsibility for carrying out its policies and representing the agency in its dealings with the federal government, the Director possesses a sufficient connection to the alleged violation of federal law.

Our jurisprudence supports the district court's conclusion that a state official violates federal law by continuing work on a "major federal action" when the requirements of NEPA and its implementing regulations have not been satisfied. *E.g.*, *Gilchrist*, 808 F.2d at 1043 (finding county officials can be enjoined from pursuing a project before federal participants in the project had complied with NEPA); *Ely II*, 497 F.2d at 257 (finding state officials can be barred from using federal funds on projects that do not comply with NEPA); *Arlington Coalition*, 458 F.2d at 1329 (holding that permitting a state official to proceed with a highway project despite alleged NEPA violations by federal participants in the project would "make a sham of the reconsideration required by federal law"). Therefore, because it asserts the Director's actions must be enjoined

to prevent an ongoing violation of NEPA, SCWF states a claim that falls within the doctrine of *Ex parte Young*.

## IV.

The district court properly found that SCWF stated a cause of action for prospective relief under NEPA and that the Director was party to the suit. Accordingly, we affirm the order of the district court denying the Director's motion to dismiss SCWF's complaint.

*AFFIRMED*