FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| FORWARD, INC., | No. 24-4983 |
| *Plaintiff - Appellant*, | D.C. No. 2:24-cv-00655-JAM-DB |
| v. | |
| JEFF MACOMBER; ANNA M. LASSO, | ORDER AND AMENDED OPINION |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted October 20, 2025
San Francisco, California

Filed April 27, 2026
Amended June 9, 2026

Before: Ronald M. Gould, John B. Owens, and Patrick J. Bumatay, Circuit Judges.

Order;
Opinion by Judge Owens;
Dissent by Judge Gould

# SUMMARY[*]

## Sovereign Immunity

The panel filed (1) an order amending its opinion and denying rehearing en banc and (2) an amended superseding opinion affirming the district court's dismissal, for lack of subject matter jurisdiction, of a citizen suit seeking injunctive and declaratory relief under the Resource Conservation and Recovery Act (RCRA) from the Secretary of the California Department of Corrections and Rehabilitation and the Director of the California Department of General Services.

In its amended opinion, the panel held that the Eleventh Amendment shields states from suits brought by citizens in federal court. Under *Ex parte Young*, 209 U.S. 123 (1908), an exception to this rule, plaintiffs can sue state officers in their official capacities for prospective declaratory or injunctive relief. The sued state officer must have some "fairly direct" connection with the alleged violation of federal law.

The panel held that here, the plaintiff did not establish the requisite "fairly direct" connection between defendants and the alleged RCRA violations in the generation of hazardous waste at a cluster of state facilities. Neither defendants' roles nor their particular actions subjected them to this suit. The panel disagreed with the dissent's

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

conclusion that "supervision" alone is enough to satisfy *Ex parte Young*.

Dissenting, Judge Gould wrote that the plaintiff adequately showed the required connection between the state defendants and the alleged RCRA violations by alleging that the defendants had control over the agencies and their operations alleged to be causing pollution.

**COUNSEL**

Thomas M. Bruen (argued) and Erik A. Reinertson, Law Offices of Thomas M. Bruen PC, Walnut Creek, California, for Plaintiff-Appellant.

Adam K. Guernsey (argued) and Cassandra L. Goltz, Harrison Temblador Hungerford & Guernsey LLP, Sacramento, California, for Defendants-Appellees.

## ORDER

The opinion filed on April 27, 2026, and reported at 173
F.4th 1121 (9th Cir. 2026), is hereby amended.   The
superseding amended opinion will be filed concurrently with
this order.

The panel has voted to deny the petition for rehearing en
banc.  Judges Owens and Bumatay have voted to deny the
petition for rehearing en banc, and Judge Gould has voted to
grant it.

The full court has been advised of the petition for
rehearing en banc, and no judge has requested a vote on
whether to rehear the matter en banc.  Fed. R. App. P. 40.

The petition for rehearing en banc is DENIED.   No
future petitions for rehearing or rehearing en banc will be
entertained.

## OPINION

OWENS, Circuit Judge:

This is a suit about who to sue. Forward, which owns and operates a California landfill, has sued two California agency heads over alleged groundwater contamination arising from state facilities. The district court determined that Forward sued the wrong state actors and dismissed the suit for lack of subject-matter jurisdiction. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

Forward, Inc. owns a landfill ("Forward Landfill") near Stockton, California. This landfill has been the subject of cleanup orders from a local water quality board to remediate groundwater contamination flowing from the site. Bordering the Forward Landfill is a cluster of state facilities, including N.A. Chaderjian Youth Correctional Facility, the O.H. Close Youth Correctional Facility, Youth Authority Department, the California Health Care Facility, the Delta Center California Conservation Corps., and related State of California Facilities ("State Facilities").

In remediating the contamination at its landfill, Forward suspected that the State Facilities were leeching hazardous waste into the groundwater that interfered with Forward's remediation efforts. Consequently, Forward entered into a "right-of-entry agreement" with the California Department of Corrections and Rehabilitation ("CDCR") and California Department of General Services ("DGS") to access the State Facilities. Forward alleged that data obtained on and near the State Facilities suggested that they were generating hazardous waste. Forward claimed that "this contamination

[wa]s due to the prior and ongoing activities . . . at the State Facilities, including the operation of a dry cleaning and laundry facility, the use of halogenated solvents in facility maintenance, and a chlorinated well-water treatment system that supplied drinking water to facility residents and staff."

Consequently, Forward sued, alleging violations of the Resource Conservation and Recovery Act ("RCRA"), which permits citizen suits against those contributing to the disposal of certain hazardous waste—including the ones Forward claims were found near the State Facilities—that may endanger health or the environment. 42 U.S.C. § 6972(a)(1). Forward sought injunctive and declaratory relief from two California state officials: Jeff Macomber, the CDCR Secretary, and Ana M. Lasso, the DGS Director. Forward alleges that, "by virtue of their offices," Macomber and Lasso ("Defendants") "have control over the generation, handling, storage, and disposal of solid waste, including hazardous waste and hazardous substances, at the State Facilities."

The district court dismissed the suit, granting Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction under Eleventh Amendment sovereign immunity. The court deemed Defendants' alleged control over hazardous waste at the State Facilities insufficient for *Ex parte Young* purposes. It held that "[t]he facts as alleged fail to demonstrate how *these* Defendants, with general oversite [sic] of certain California agencies that are not tasked with handling solid or hazardous waste, have any sort of responsibility or connection to waste management at the Stockton State Facilities." Rather, the court concluded, Forward was improperly "mak[ing] Defendants mere representatives of California."

## II. DISCUSSION

### A. Standard of Review

We review de novo a dismissal under Federal Rule of Civil Procedure 12(b)(1). *Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1049 (9th Cir. 2019). We also review de novo a party's immunity under the Eleventh Amendment. *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010).

### B. Forward Fails To Establish The "Fairly Direct" Connection Required By *Ex parte Young*.

The Eleventh Amendment shields states from suits brought by citizens in federal court. Under *Ex parte Young*, 209 U.S. 123 (1908), an exception to this rule, plaintiffs can sue "state officers in their official capacities for prospective declaratory or injunctive relief . . . for their alleged violations of federal law." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (internal quotation marks and citation omitted). The sued state officer must have "some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157.

We have long held that the connection must "be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Ass'n des Eleveurs*, 729 F.3d at 943 (quoting *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)); *see also Mecinas v. Hobbs*, 30 F.4th 890, 903–04 (9th Cir. 2022) (requiring "the implicated state official [to] have a relevant role that goes beyond a generalized duty to enforce state law or general supervisory power over the

persons responsible for enforcing the challenged provision" (internal quotation marks and citation omitted)).  This "fairly direct" requirement also applies where a plaintiff seeks to enjoin an ongoing violation of federal law.  *See Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 955 (9th Cir. 2023) ("*Ex parte Young* allows suits seeking prospective relief against a state official who has a fairly direct connection to an ongoing violation of federal law." (citation omitted)).

Here, Forward has not established the requisite "fairly direct" connection between Defendants and the alleged RCRA violations.  As the district court correctly observed, "Defendant Macomber is an official for California's penal law enforcement agency and Defendant Lasso is an official for California's general services agency."   Neither Defendants' roles nor their particular actions subject them to this suit.

For Macomber, the relevant state statute says only that "the supervision, management and control of the state prisons, and the responsibility for the care, custody, treatment, training, discipline and employment of persons confined" are vested in the Secretary.  Cal. Penal Code § 5054.  Similarly, for Lasso, the connection is even more tenuous.   The DGS "provide[s] centralized services including, but not limited to, planning, acquisition, construction, and maintenance of state buildings and property."  Cal. Gov't Code § 14600.  The DGS Director "perform[s] all duties, exercise[s] all powers and jurisdiction, assume[s] and discharge[s] all responsibilities, and carr[ies] out and effect[s] all purposes vested by law in the office."  *Id.* § 14605; *cf. Hobbs*, 30 F.4th at 903–04 (permitting suit against the Arizona Secretary of State challenging the constitutionality of the state's Ballot Order

Statute because the relevant state statute gave the Secretary statutory authority to prescribe ballot rules).

Plaintiff's Complaint also fails to identify any direct actions by the Defendants that resulted in the alleged federal law violations. As the district court recognized, "[t]he Complaint contains no specific factual allegations" of Defendants' connection with enforcing RCRA; responsibility to plan or administrate solid waste management; or actual disposal of hazardous waste at the State Facilities. In sum, nothing in the Complaint established Defendants' "fairly direct" connection to the alleged violations required under *Ex parte Young*. *Ass'n des Eleveurs*, 729 F.3d at 943; *cf. R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1227–28 (9th Cir. 2023) (satisfying *Ex parte Young* connection where school official issued the order and conducted the investigation leading to student's dismissal).

Hence, Forward's action—at least against these Defendants—fails.

## C. The Dissent's Rule Is Unprecedented And Contravenes *Ex parte Young*.

Despite long-established case law to the contrary, the dissent insists that there is yet another pathway in which "supervision" alone is enough to satisfy *Ex parte Young*. In the dissent's world, different *Ex parte Young* rules apply for different case types. First, it distinguishes between "enforcement cases" and "violation cases," where "state officials are sued for directly violating a federal law." Then, it suggests that the "fairly direct" rule does not apply to "violation cases." Supposedly grounded in our case law, for such "violation cases," "supervision of the agency in alleged violation of federal

law is ordinarily . . . sufficient . . . to . . . satisfy the 'some connection' requirement of *Ex parte Young*."

Not so. The cases the dissent cites do not establish that supervision alone is sufficient to satisfy *Ex parte Young*.[1] First, its reliance on *Center for Biological Diversity v. United States Forest Service*, 80 F.4th 943 (9th Cir. 2023), is misguided. There, we concluded that *Ex parte Young* did not permit suit against the state defendants and reiterated that *Ex parte Young* requires the state official to have had a "fairly direct connection to an ongoing violation of federal law." *Ctr. for Biological Diversity*, 80 F.4th at 955. And to the extent that case said anything about what constitutes "actual, as opposed to hypothetical, control," *id.*, it related to the theory of contributor liability under RCRA—not the "fairly direct connection" required for *Ex parte Young*. *Id.* (citation omitted).

Next, the dissent cites *National Resources Defense Council v. California Department of Transportation* to assert that control suffices for *Ex parte Young*. 96 F.3d 420, 424 (9th Cir. 1996). In that case, we permitted plaintiffs to bring an *Ex parte Young* action against the Caltrans Director

---

[1] The dissent's proposed rule is also unprecedented across other circuits. No other circuit has created distinct *Ex parte Young* tests for "enforcement cases" and "violation cases." And even in "violation cases," circuits have continued to require some degree of connection between the state officer and challenged state action. *See, e.g.*, *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008) ("'[S]pecial relation' under *Ex parte Young* has served as a measure of *proximity to* and *responsibility for* the challenged state action." (emphasis in original)); *Top Flight Ent., Ltd. v. Schuette*, 729 F.3d 623, 634 (6th Cir. 2013) (noting that the state official sued "must have, by virtue of the office, some connection with the alleged unconstitutional act or conduct of which the plaintiff complains" (internal quotation marks and citation omitted)).

for Caltrans' alleged noncompliance with a Clean Water Act permit requiring it to control polluted stormwater runoff from roadways and maintenance yards. *Id.* at 421. In allowing the suit, we alluded to the purpose of *Ex parte Young*, *id.* at 422, and Congress' purpose in enacting the Clean Water Act's citizen suit provision, *id.* at 424. But from this reasoning alone, it is a far stretch to say that, in a case concerning a different statute, an agency head's control alone suffices for *Ex parte Young* liability. [2]

Accordingly, under the established limits of *Ex parte Young*, Forward's action fails. We decline to disturb the careful balance on which *Ex parte Young* rests by crafting a new test. The dissent suggests that we are "creat[ing] a dangerous loophole allowing state facilities to pollute willy-nilly and without consequence in violation of federal environmental laws." But many, many *Ex parte Young* suits have been successfully pursued, and these suits will continue.

They just need to be against the right people. This one is not.[3]

---

[2] Lastly, the dissent also cites *Committee to Save Mokelumne River v. East Bay Municipal Utility District*, 13 F.3d 305 (9th Cir. 1993), as an instance where "we permitted suit against the California Regional Water Quality Control Board . . . for pollution of a mining facility in violation of the CWA." In that case, the relevant question was not whether the defendants were sufficiently connected to the allegedly impermissible conduct. Rather, the question was whether the district court could consider "past conduct as it relates to ongoing or future violations." *Id.* at 309. That is not in dispute here.

[3] Forward declined to name the heads of the various state facilities, like a superintendent, district director, or correctional plant supervisor, as defendants in its complaint. *See, e.g.*, Cal. Code Regs. tit. 15, § 1320 (superintendent, director, or facility manager in charge of juvenile

**AFFIRMED.**

**GOULD,** Circuit Judge, dissenting:

Rather than holding, as the majority does, that Forward did not establish the required connection between the State Defendants and the alleged Resources Conservation and Recovery Act ("RCRA") violations necessary to overcome sovereign immunity, I would have held that Forward adequately showed such connection by alleging that the State Defendants had control over the agencies and their operations alleged to be causing pollution. Specifically, the complaint alleged that Forward is informed and believes that this contamination is due to the prior and ongoing activities of the State Defendants at the State Facilities, including: (1) the State's operation of a dry cleaning and laundry facility; (2) the use of halogenated solvents in facility maintenance; and (3) a chlorinated well-water treatment system that supplied drinking water to facility residents and staff. This case was dismissed by the district court based solely on Fed. R. Civ. P 12(b)(1) and occurred before any discovery and resolution of any conflicts in evidence that may have developed through a trial or summary judgment process. Instead, the State Defendants relied on the argument that to state a claim under *Ex parte Young*,

---

facility); Cal. Health & Safety Code § 25160 (requiring waste generators to complete hazardous waste manifests); Cal. Dep't of Toxic Substances Control, *Hazardous Waste Tracking System: Facility Profile CAD982044380*, https://perma.cc/574G-5QY5 (correctional plant supervisor listed as waste handler). Accordingly, we do not decide if the *Ex parte Young* exception would apply to such state officials under these circumstances.

avoiding the defense of sovereign immunity, it was necessary to show a connection of the State Defendants to the operations causing pollution. In the Supreme Court's language, "[the] officer must have some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. 123 (1908). In the Ninth Circuit, we have further explained, "that connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,* 729 F.3d 937, 943 (9th Cir. 2013) (internal quotation marks and citation omitted).

Such a connection is necessary, but the majority misconstrues existing law with respect to *Ex parte Young* by misapplying the connection requirement in this case. That requirement is often seen in cases involving the enforcement of a state law. But in this case, Forward alleges a violation of RCRA.

As a general rule, states are protected by the Eleventh Amendment from suits brought by citizens in federal court. But, under the Supreme Court's precedent in the leading case of *Ex Parte Young,* 209 U.S. 123 (1908), an important exception to this general rule allows suit against "state officers in their official capacities for prospective declaratory or injunctive relief . . . for their alleged violations of federal law." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,* 729 F.3d 937, 943 (9th Cir. 2013) (internal quotation marks and citation omitted). Most *Ex parte Young* cases, and *Ex parte Young* itself, concern declaratory or injunctive relief against a state official who has the power to enforce a state statute that would remedy an ongoing violation of federal law. This line of cases follows the

statement in *Ex parte Young* that a state official "must have some connection with the enforcement of the act," and has emphasized the required connection between the state official and responsibility for the enforcement of the state statute at issue.  *See, e.g., Ex parte Young,* 209 U.S. 123, 157 (1908)*; In re Dairy Mart Convenience Stores, Inc.,* 411 F.3d 367, 373 (2d Cir. 2005)*; Const. Party of Pennsylvania v. Cortes,* 824 F.3d 386, 396 (3d Cir. 2016); *Richardson v. Flores,* 28 F.4th 649, 654 (5th Cir. 2022); *Children's Healthcare is a Legal Duty, Inc. v. Deters,* 92 F.3d 1412, 1416 (6th Cir. 1996); *Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 645 (7th Cir. 2006); *281 Care Comm. v. Arneson,* 638 F.3d 621, 632 (8th Cir. 2011); *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013); *Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1341 (11th Cir. 1999); *Ray v. Garrison,* 42 App. D.C. 34, 38 (D.C. Cir. 1914).  Appellant Forward refers to this line of cases as "enforcement cases."

Fewer *Ex parte Young* cases concern situations in which, as in the appeal presented to us, state officials are sued for directly violating a federal law.  In cases involving activities violating federal law ("violation cases"), we and some other courts have applied the *Ex parte Young* exception without addressing the above distinction between enforcement cases and violation cases or analyzing the nature of defendants' connection to enforcement of the relevant federal law or to state-level administration of the subject matter governed by such federal law.  *See National Resources Defense Council v. California Department of Transportation,* 96 F.3d 420, 424 (9th Cir. 1996); *Comm. to Save Mokelumne River v. East Bay Mun. Dist*., 13 F.3d. 305 (9th Cir. 1993).[1]  We have also,

---

[1] *See also Williams v. Ala. Dep't of Transp.*, 119 F.Supp.2d 1249 (M.D. Ala. 2000); *Living Lands v. Cline,* 591 F.Supp.3d 79 (S.D. W.Va. 2022);

in two instances, used the "fairly direct connection" language to describe an ongoing violation rather than enforcement.  *See Ctr. for Biological Diversity v. United States Forest Serv.,* 80 F.4th 943, 955 (9th Cir. 2023); *City of San Juan Capistrano v. California Pub. Utilities Comm'n,* 937 F.3d 1278, 1281 (9th Cir. 2019).

The majority does not acknowledge any distinction between enforcement and violation cases.  Under the Ninth Circuit's violation case precedent, supervision of the agency in alleged violation of federal law is ordinarily a sufficient connection to an ongoing violation to satisfy the "some connection" requirement of *Ex parte Young*.

In *Center for Biological Diversity v. United States Forest Serv.*, 80 F.4th 943, 950 (9th Cir. 2023), a violation case, we concluded that when the defendant U.S. Forest Service ("USFS") owned forest land and a third party was unlawfully disposing of lead ammunition, plaintiff had "failed to allege an ongoing violation of RCRA" under *Ex parte Young* "for the same reasons it [] failed to allege a violation of RCRA."  80 F.4th at 956.  Specifically, "to state a claim predicated on RCRA liability for 'contributing to' the disposal of hazardous waste, a plaintiff must allege that the defendant had a measure of control over the waste at the time of its disposal or was otherwise actively involved in the waste disposal process" and defendant had "not taken any affirmative action in addition to property ownership which would give it actual, as opposed to hypothetical, control over the disposal of spent lead ammunition."  *Id.* at 955.  An

---

*W. Virginia Highlands Conservancy, Inc. v. Huffman,* 651 F. Supp. 2d 512, 529 (S.D.W. Va. 2009); *Raritan Baykeeper, Inc. v. NL Industries, Inc.*, No. 09-cv-4117 (JAP), 2013 WL 103880, at *22–*23 (D.N.J. Jan. 8, 2013).

agency's choice not to regulate despite authority to do so did not "manifest the type of actual, active control contemplated by RCRA." *Id*. at 951. *See also Hinds Invs., L.P. v. Angioli,* 654 F.3d 846, 851 (9th Cir. 2011) (holding that "some allegation of defendants' continuing control over waste disposal" is necessary for "RCRA claims to survive"). *Center for Biological Diversity* holds that mere ownership of property and a failure to regulate third-parties who were authorized by special-use permits to be on the property was not sufficient to establish the requisite "fairly direct connection" to invoke the *Ex parte Young* exception and RCRA liability against USFS. But if USFS had been disposing of the spent lead ammunition itself, I believe that such "affirmative action in addition to property ownership" would have given USFS "actual, as opposed to hypothetical, control over the disposal" and would have properly established an ongoing violation of RCRA under *Ex parte Young*.

We did not in that case address the issue of which USFS official or officials would have been properly named as defendants. But we reached a parallel question in *National Resources Defense Council v. California Department of Transportation,* 96 F.3d 420, 424 (9th Cir. 1996). There, we concluded that a failure to comply with Clean Water Act ("CWA")[2] permit restrictions on stormwater runoff from roadways and maintenance yards made the Director of the California Department of Transportation ("Caltrans") subject to prospective declaratory or injunctive relief under

---

[2] The citizen suit provisions in the CWA and RCRA include the same language providing for suit against "any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution." 42 U.S.C. § 6972(a)(1)(B); 33 U.S.C. § 1365(a)(1).

*Ex parte Young* for violation of the CWA. In coming to this conclusion in *National Resources Defense Council*, we did not say or suggest that the application of *Ex Parte Young* depended on whether CalTrans was responsible for enforcing the CWA. And we did not discuss the Director's personal involvement with the unpermitted discharges. We held that "[i]t would seem reasonable, then, that Congress implicitly intended to authorize citizens to bring *Ex parte Young* suits against state officials with the responsibility to comply with clean water standards and permits," and therefore that the Director's control over the Caltrans operations in violation of the CWA satisfied *Ex parte Young. Nat. Res. Def. Council v. California Dep't of Transp.,* 96 F.3d 420, 424 (9th Cir. 1996).

Similarly, in *Committee to Save Mokelumne River v. East Bay Mun. Dist.*, 13 F.3d 305 (9th Cir. 1993), we permitted suit against the California Regional Water Quality Control Board ("the Board") for pollution of a mining facility in violation of the CWA. Again, we dismissed the Board's asserted defense of sovereign immunity, explaining that the plaintiff sought prospective equitable relief as permitted by the Supreme Court's precedent of *Ex parte Young*. Once more, we did not discuss which members of the Board would have been the proper defendants if individuals were sued, nor did we consider the personal actions taken by any members when we permitted suit against the Board.

Forward alleges not only that the agencies charged with pollution own and/or control the land in question, but also that the agencies themselves are disposing of waste through the agencies' operations, providing for examples: (1) operating dry cleaning and laundry facilities, (2) conducting facility maintenance, and (3) operating a

water treatment facility. Forward alleges that the State Defendants have direct control over the alleged waste disposal and the authority to remedy it, and Forward also points to the Right of Entry Permit & Monitoring Well Agreement between Forward and both the California Department of Corrections and Rehabilitation ("CDCR") and the California Department of General Services ("DGS") as evidence of this authority. Forward in its complaint does not allege a failure by the State Defendants to regulate third parties.[3]

The State Defendants' control over the waste disposal derives from their respective statutory duties.[4] The majority contends that these duties are too tenuous to show a connection to the waste disposal creating potential RCRA violations. These duties show supervisory and managerial control over the facilities and operations at the site of the pollution. By requiring Forward to plead more to survive a motion to dismiss, the majority fashions an unworkable, unprecedented, and unfair standard that is an overly

---

[3] Although third parties were potentially involved in the waste disposal, such involvement is not shown by the complaint's allegations standing alone, and we must take those allegations as true when addressing a motion to dismiss before relevant evidence has been presented.

[4] For Macomber, the Secretary of CDCR, the relevant state statute says the Secretary oversees "the supervision, management and control of the state prisons, and the responsibility for the care, custody, treatment, training, discipline, and employment of persons confined." Cal. Penal Code § 5054. For Lasso, the Director of DGS, the DGS "provide[s] centralized services including, but not limited to, planning, acquisition, construction, and maintenance of state buildings and property." Cal. Gov't Code § 14600. The DGS Director "perform[s] all duties, exercise[s] all powers and jurisdiction, assume[s] and discharge[s] all responsibilities, and carr[ies] out and effect[s] all purposes vested by law in the office." Id. § 14605.

burdensome test to show a fairly direct connection to the waste disposal.  Nothing in *Ex parte Young* or the Ninth Circuit cases following it suggests that the state official(s) controlling a state agency's disposal of waste or other unlawful behavior cannot be sued for declaratory or injunctive relief as a result of allegedly violating a federal statute unless the officials have themselves taken affirmative steps to violate the federal statute.

Under *Ex parte Young*, when we consider responsibility to manage and control the state agency disposing of waste, or indeed state officials controlling activities that violate any federal statute, it should be a sufficient connection to the ongoing violation of federal law that justifies giving a remedy against such a controlling person.  While duties of general oversight have been questioned in enforcement cases operating under the premise that "[g]eneral authority to enforce the laws of the state is an insufficient ground for abrogating Eleventh Amendment immunity," *see S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008) (internal quotation marks and citation omitted)(emphasis added), Forward has not sued the Governor of California, *see Confederated Tribes & Bands of the Yakama Nation v. Locke,* 176 F.3d 467, 470 (9th Cir. 1999)—instead, Forward has only sued the very officials most likely to have the legal authority to remedy the ongoing violation of federal law.  Moreover, the measure of control over the waste disposal process by State Defendants or their agencies presents a fact-intensive analysis that a district court reasonably should be able to undertake only after ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(1), after consideration of pertinent evidence.  The majority ignores the procedural posture of the case.

Under the majority's ill-considered approach, plaintiffs will be unable to sue the head of a state agency for the agency's actions in violation of federal statutes presumably because under the majority's view, duties concerning control and oversight will be too tenuous to establish a connection to the illegal actions. That reasoning does not protect the public from state agencies that violate federal law to the detriment of the public. If a plaintiff cannot sue the state employees or officials with the key responsibility to follow federal law as declared in environmental statutes like RCRA, then those federal statutes may become dead letters without impact on states, thereby contravening the supremacy clause of our Constitution. U.S. Const. art. VI, § 2. The majority neither identifies specific individuals nor analyzes who plaintiffs could sue to enforce RCRA, an important federal environmental law. Instead, the majority in its footnote 3 cites two regulations that may apply to some but not all allegedly polluting facilities. However, the majority does not analyze whether the persons with responsibilities as "superintendent, director, or facility manager" could be sued under *Ex Parte Young*. Therefore, these questions remain unanswered: Would a lawsuit need to be filed against a lower-level employee who signs off on the polluting operations on a given day? Would a suit against the persons with responsibilities cited in the majority's footnote 3 be subject to suit under *Ex Parte Young*? Or would suit have to be filed against a janitor or other persons who physically dispose of the waste? It is unknown and unclear whether such lower-level employees would have the legal authority to provide any remedy commanded by declaratory or injunctive relief against unlawful disposal of waste, or similarly to remedy violations of other federal statutes. Absent a showing of injury, causation, and redressability,

plaintiffs would not have Article III jurisdiction permitting the party to bring suit. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Nor in many situations would it be reasonable to expect plaintiffs to identify the responsible persons having a sufficient connection to a state agency's violation of federal law before plaintiffs have the benefit of compelled discovery against the state. Plaintiffs seeking waste disposal consistent with RCRA's requirements may find it unduly difficult, if not impossible, to avoid dismissal for lack of subject-matter jurisdiction upon a motion to dismiss resting on the majority's unwise decision in this case. The majority creates a dangerous loophole allowing state facilities to pollute willy-nilly and without consequence in violation of federal environmental laws.